IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **BIRMINGHAM SOUTHEAST, LLC,** | } |
| **Plaintiff,** | } |
| v. | } CASE NO. CV 01-B-2460-S |
| **ZURICH U.S. and VALIANT INSURANCE COMPANY,** | } |
| **Defendants.** | } |

**ENTERED APR - 1 2004**

## MEMORANDUM OPINION

Currently before the court are cross Motions for Summary Judgment filed by the Plaintiff, Birmingham Southeast, L.L.C., ("BSE"), and by Defendant, Valiant Insurance Company[1] ("Valiant" or "Defendant"). In its Complaint, BSE seeks reimbursement for the costs of defending an action filed by the Estate of Ed Carter against BSE in the Circuit Court of Jefferson County, Alabama. Upon consideration of the record, the relevant law, the submissions of the parties and the argument of counsel, the court finds the Motion for Summary Judgment of the plaintiff BSE is due to be granted and the Motion for Summary Judgment filed by defendant Valiant is due to be denied.

**I.    FACTUAL SUMMARY**

In September 1998, BSE entered into agreements with numerous contractors for the construction of a steel mill in Cartersville, Georgia. (Doc. 22, Ex. A at 13.) Electric Machine Control, Inc. ("EMC"), an Alabama corporation, supervised general wiring, conduit layout and panel arrangement at BSE's Cartersville plant. (Doc. 22, Ex. B at 24.)

---

[1]At oral argument, the parties agreed that defendant Zurich U.S. is not a proper party. Therefore, all claims against defendant Zurich are due to be dismissed with prejudice.

On March 30, 1999, Edwin McWilliams Carter ("Ed Carter"), a certified electrical engineer and owner of EMC, sustained injuries while performing work on an electrical cabinet at BSE's Cartersville, Georgia rolling mill (the "job"). (Doc. 1 ¶ 6; Doc. 21, Ex. 5, Tab E ¶ 1.) Carter opened the cabinet doors to BSE rolling mill electrical Stand No.9 and an explosion occurred. *Id.* Ed Carter died on May 1, 1999. (Doc. 21, Ex. 5, Tab F ¶ 4.)

As a result of his on-the-job injuries and death, Carter's estate recovered worker's compensation benefits from EMC's worker's compensation carrier. (*See generally* Doc. 21, Ex. 5, Tab J.) On April 22, 1999, Ed Carter and his wife, Linda Carter, (collectively the "Carters") filed suit against BSE in the Circuit Court of Jefferson County, Alabama CV-99-2319 (the "Carter lawsuit"). (Doc. 21, Ex. 5, Tab E.) Carter claimed that BSE left an unsafe condition in the cabinet, and as a result, Carter was injured while troubleshooting the cabinet on behalf of EMC. (*See generally* Doc. 21, Ex. 5, Tab E.) The Carter Complaint was amended to include claims for wrongful death and allegations that defendants negligently caused Ed Carter's death while he was working at BSE's Cartersville mill. (Doc. 21, Ex. 5, Tab F.) On October 11, 1999, the Carters filed a Second Amended Complaint adding as defendants, ABB Service, Inc., Datel Engineering Co., Inc., and White Electrical Construction Co., and sought damages against all defendants, including BSE. (Doc. 21, Ex. 5, Tab G.)

Carter's injuries resulted from work performed on behalf of EMC pursuant to the construction contract entered into between BSE and EMC ("BSE/EMC Contract"). As part of its contract with BSE, EMC executed the contract's Appendix K, which states, in part:

> Before [EMC] will be permitted to start work, [EMC] must supply an insurance certificate from an insurance company acceptable to [BSE's] Risk Management Department. The insurance certificate must list [BSE] as an additional insured and provide that the coverage is primary coverage for [BSE].

> The following requirements are the minimum that will be accepted as coverage for [EMC] performing work on [BSE] property. In some situations, additional and/or special coverage may be required.
>
> Occurrence Form Commercial General Liability with a general aggregate of $1,000,000 per occurrence, including products and completed operations aggregate of not less than $1,000,000 each occurrence.

(Doc. 21, Ex. 4, Tab B at 1.) In addition, EMC agreed in the BSE/EMC contract to indemnify BSE for liabilities arising out of EMC's work and not arising out of the "sole negligence" of BSE. (Doc. 21, Ex. 4, Tab A at ZURICH 0043, § 7.11.)

Defendant Valiant issued a general liability policy to EMC providing coverage to those businesses with whom EMC agreed to provide insurance by permit or agreed to indemnify. (Doc. 21, Ex. 2, Tab B.) Section II of the policy provides, in part, as follows:

> **Section II – Who is an Insured . . .**
>
> 3.   With respect to COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY and COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY, any person or organization with whom you agree, because of a written "insured contract"[2] or *permit to provide insurance* such as is afforded under this policy is an insured, but only with respect to liability arising out of your operations, "your work" or facilities owned or used by you.
>
> This insurance does not apply unless the written "insured contract" or permit has been signed prior to the date of "bodily injury," "property damage," "personal injury," or "advertising injury."

(Italics added).

---

[2] "Insured Contract" is defined in the policy to include: "That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract of agreement." (Doc. 21, Ex. 2, Tab B at VAL 0079, § V(14).)

-3-

(Doc. 21, Ex. 2, Tab B at VAL 0071, § II(3).) The term "permit to provide insurance" is not defined in the policy. (Doc. 21, Ex. 2, Tab B at VAL 0078-82, § V.) Defendants representative Jackie Ward testified:

> Q: What is a permit to write [(provide)] insurance?
>
> A: You got me.

(Doc. 21, Ex. 2 at 41.)

However, the umbrella insurance policy issued to EMC contains material discussing the *ACEAdvantage* coverage under the Valiant policy, which includes information regarding the meaning of the term "permit to provide insurance." (Doc. 21, Ex. 2 at 50-54.) That policy states: "*ACEAdvantage* automatically includes as additional insureds any other person or organization . . . if the insured is required by written contract or written agreement or permit to provide such insurance . . . ." (Doc. 21, Ex. 2, Tab C at VAL 0033.) The umbrella policy issued to EMC is an *ACEAdvantage* policy. (Doc. 21, Ex. 2, Tab B at VAL 0041.)

EMC assumed the tort liability of BSE in Section 7.11 of the BSE/EMC contract, titled "Indemnification." Section 7.11 of the BSE/EMC contract states, in pertinent part:

> [EMC] shall indemnify, defend and hold harmless [BSE] and its agents, officers, directors and employees from and against all liability, claims, damages, loss, cost, expense or claim, including, without limitation . . . attorneys' fees, court costs and costs of appellate proceedings, arising or resulting from, or caused in whole or in part by (i) performance of the Work, . . . .
> . . .
> Nothing contained in this Article or this Agreement shall constitute, or be construed as, an agreement of [EMC] to indemnify [BSE] for [BSE's] sole negligence in violation of the laws of the state of Georgia.

(Doc. 21, Ex. 4, Tab A at Zurich 0043, § 7.11.)

On April 21, 2000, BSE's counsel wrote Valiant and requested defense and indemnity coverage under the policy for the Carter lawsuit. (Doc. 21, Ex. 5, Tab A.) On May 12, 2000, Valiant responded that the Valiant policy did not "provide additional insured status to [BSE]" and that the May 12th letter should be considered "a formal denial of [BSE's] requests for defense and indemnification . . . ." (Doc. 21, Ex. 5, Tab B.) Following defendant Valiant's May 12th denial, Valiant's representative Helen Farrell contacted BSE's counsel and asked if there was a signed Appendix K to the contract, and advised that she had never been provided with a signed Appendix K. (Doc. 21, Ex. 5 ¶ 4.) BSE counsel provided Ms. Farrell with a copy of Appendix K, signed and dated by Ed Carter on September 15, 1998. *Id.*

The Carter case was mediated and settled by the parties.[3] (Doc. 21, Ex. 5 ¶ 17.) As part of the settlement, both BSE and ABB Service contributed substantially to the settlement amount. *Id.* In addition, BSE incurred over $200,000 in defense costs for the Carter lawsuit, including $100,000 that was not reimbursed by any insurance carrier for BSE. (Doc. 21, Ex. 1 ¶¶ 3, 4.)

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, Rule 56(e)

---

[3]A construction dispute between BSE and EMC, which included claims for indemnity by BSE against EMC, also was settled at mediation. Both the settlement agreements entered into in the wrongful death case and the construction dispute specifically carve out from the release agreements BSE's claims against defendants.

requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III.  VALIANT'S DUTY TO DEFEND

#### A.  EMC's Policy Covers the Type of Damages Alleged in the Carter Lawsuit.

The "Insuring Agreement" in Coverage A, which applies to liability for bodily injury and property damage, reads:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking [damages for 'bodily injury' to which the policy applies].

(Doc. 21, Ex. 2, Tab B at VAL 0060, § I(1)(a).) The term "we," as it is used in the Valiant policy, refers to Valiant, "the Company providing this insurance." (Doc. 21, Ex. 2, Tab B at VAL 0059.)

The term "bodily Injury" is defined as "bodily injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright or death resulting from bodily

-6-

injury, sickness or disease." (Doc. 21, Ex. 2, Tab B at VAL 0078, § V(4).) "Suit" is defined as "a civil proceeding in which damages because of 'bodily injury' . . . to which this insurance applies are alleged." (Doc. 21, Ex. 2, Tab B at VAL 0082, § V(25).)

Defendants do not dispute, that the injuries alleged in the Carter lawsuit were "bodily injuries," and that the Carter lawsuit was a "suit," as those terms are defined and used in the Valiant policy. Valiant contends, however, that BSE is not an "insured" under the Valiant policy.

### B. BSE is an "Insured" Under the Terms of the Valiant Policy.

By the express terms of the policy, a duty to defend attaches if BSE is an "insured" as provided in the policy. "The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II)." (Doc. 21, Ex. 2, Tab B at VAL 0059.) This section expands coverage under the Valiant policy to all those entities meeting the definition of an insured. In pertinent part, this section provides: "With respect to COVERAGE A, BODILY INJURY . . . **any person or organization with whom [EMC] agree[s], because of a written 'insured contract' or permit to provide insurance such as is afforded under this policy is an insured**, but only with respect to liability arising out of [EMC's] operations, [EMC's] 'work' or facilities owned or used by [EMC]." *Id.* at VAL 0071 (emphasis added).

### 1. BSE is an "Insured" Because EMC Agreed to Provide it With Insurance by Executing Appendix K.

Appendix K of the EMC/BSE contract is labeled, "Contractor's Application for Permission to Work on [BSE] . . . ," and provides:

> Before [EMC] will be permitted to start work, [EMC] must supply an insurance certificate from an insurance company acceptable to [BSE's] Risk Management

> Department. The insurance certificate must list [BSE] as an additional insured and provide that the coverage is primary coverage for [BSE].
>
> The following requirements are the minimum that will be accepted as coverage for [EMC's] performing work on [BSE] property. In some situations, additional and/or special coverage may be required:
>
> Occurrence Form Commercial General Liability with a general aggregate [limit] of $1,000,000 per occurrence, including products and completed operations aggregate of not less than $1,000,000 each occurrence.

(Doc. 21, Ex. 4, Tab B at 1.) It is clear from this provision that EMC agreed to provide BSE with insurance. Less clear, however, is what is meant by the term "permit to provide insurance," within Section II 3. of the Valiant policy, and whether Appendix K is such a permit. The Valiant policy does not define this term (Doc. 21, Ex. 2, Tab B at VAL 0078-82, § V), and claims adjusters employed by the defendant could not explain the meaning of the term (Doc. 21, Ex. 2 at 41; Doc. 21, Ex. 3 at 33, 37).

The provision of the Valiant policy extending coverage to an organization with whom EMC agrees, because of a "permit to provide insurance," is ambiguous. Upon finding a term ambiguous, the court is directed to construe the term in favor of the insured and against the insurer. *Employers Mut. Cas. Co. v. Mallard*, 309 F.3d 1305, 1307 (11th Cir. 2002); *American Cas. Co. of Reading, PA v. Etowah Bank*, 288 F.3d 1282, 1285 (11th Cir. 2002); *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 695 (Ala. 2001); *Blackburn v. Fid. & Deposit Co.*, 667 So. 2d 661, 670 (Ala. 1995). In addition, any "exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage to the insured." *Altiere v. Blue Cross and Blue Shield of Ala.*, 551 So. 2d 290, 292 (Ala. 1989).

BSE contends that Appendix K to the BSE/EMC contract is a permit to provide insurance within the meaning of EMS's insurance policy with defendants. In Appendix K, EMC agreed to

-8-

provide BSE with liability insurance up to certain limits, *before* it began work for BSE. Specifically, the Appendix states in part that "[b]efore a contractor is permitted to start work the contractor must supply an insurance certificate from an insurance company acceptable to BSE." Although the phrase in EMC's insurance contract "permit to provide insurance" is unclear, drawing all reasonable inferences against the insurer, the language in Appendix K to the BSE/EMC contract is a "permit to provide insurance." This interpretation is supported by the language in EMC's umbrella insurance policy, which, like the Valiant policy, is an *ACEAdvantage* policy. The EMC umbrella policy provides, "*ACEAdvantage* automatically includes as additional insureds any other person or organization . . . if the insured is required by written contract or written agreement or permit to provide such insurance . . . ." (Doc. 21, Ex. 2, Tab C at VAL 0033.) The language in EMC's umbrella policy concerning additional insureds supports BSE's argument that it is an "Insured" under EMC's insurance policy with defendant.[4]

---

[4]Other courts have held that policies containing additional insured language, like that of Section II(3) of the Valiant policy, automatically confer additional insured status to persons or organizations by virtue of a contract requiring insurance. *See, e.g. Sonat Exploration v. Falcon Drilling, Co. Inc.*, 85 F. Supp. 2d 649, 653 (W.D. La. 1999), *aff'd* 245 F.3d 791 (5th Cir. 2000) (holding that contractor's insurer owed coverage to Sonat as additional insured under contractor's liability policy where contractor agreed to name Sonat as an additional insured under the policy and where the policy provided insured status to those who contractor was required "by written contract" to name as additional insured); *Gulf Oil Corp. v. Mobile Drilling Barge*, 441 F. Supp. 1, 6 (E.D. La. 1975) (holding that drilling contractor was an additional insured on the effective date of the contract containing the agreement to procure insurance because the subcontractor's liability policy extended additional insured status to "any person or organization to whom or to which [subcontractor] is obligated by virtue of a written contract to provide insurance . . ."), *aff'd* 565 F.2d 958 (5th Cir. 1978); *Pricso Serena Sturm Architects, Ltd. v. Liberty Mut. Ins. Co.*, No. 94 C 5716, 1995 WL 729292, at *5 (N.D. Ill. Dec. 8, 1995) (holding that insurer owed duty to defend architectural firm as additional insured under contractor's liability policy, where contractor agreed in underlying contract with property owner to obtain liability insurance for architect and where policy provided coverage to "[a]ny person or organization to whom [the contractor was] obligated by an agreement to provide insurance . . .").

Upon review of Section II 3. of EMC's policy and Appendix K of the BSE/EMC contract, the court finds that BSE was an "Insured" under EMC's policy and should have been afforded a defense by Valiant.

### 2. Section 7.11 of the BSE/EMC Contract is an "Insured Contract" Qualifying BSE as an "Insured" under the Policy.

BSE contends that it is an additional "insured" under EMC's contract because EMC's indemnity obligation in the BSE/EMC contract is an "written insured contract" as defined in the EMC/Valiant policy. The Policy extends coverage to "any person or entity with whom [EMC] agree[s], because of a written 'insured contract'" to provide insurance. (Doc. 21, Ex. 2, Tab B at VAL 0071, § II(3).) "Insured contract" is defined in the Policy in pertinent part as "[t]hat part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." (*Id.* at VAL 0079.) EMC assumed the tort liability of BSE in Section 7.11 of the BSE/EMC contract, titled "Indemnification." Doc. 21, Ex. 4, Tab A at ZURICH 0043, § 7.11.

> Section 7.11 of the BSE/EMC contract states, in pertinent part:
>
> [EMC] shall indemnify, defend and hold harmless [BSE] and its agents, officers, directors and employees from and against all liability, claims, damages, loss, cost, expense or claim, including, without limitation . . . attorneys' fees, court costs and costs of appellate proceedings, arising or resulting from, or caused in whole or in part by (i) performance of the Work, . . . .
> . . .
> Nothing contained in this Article or this Agreement shall constitute, or be construed as, an agreement of [EMC] to indemnify [BSE] for [BSE's] sole negligence in violation of the laws of the state of Georgia.

Defendant argues Mr. Carter's claims arose out of BSE's sole negligence, allowing § 7.11 to prevent indemnification from BSE. Defendant argues further that if BSE and EMC are

concurrently negligent, Appendix K limits EMC's obligations of indemnity only to the extent of EMC's own negligence. It is well settled that an insurer's duty to defend is broader than its duty to pay. *Universal Underwriters Ins. Co. v. Youngblood*, 549 So. 2d 76, 78 (Ala. 1989) (citing *Am. States Ins. Co. v. Cooper*, 518 So. 2d 708 (Ala. 1987); *Burnham Shoes, Inc. v. West Am. Ins. Co.*, 504 So. 2d 238 (Ala. 1987); *United States Fid. & Guar. Co. v. Armstrong*, 479 So. 2d 1164 (Ala. 1985)). "If the injured party's complaint alleges an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend, regardless of the ultimate liability of the insured." *Armstrong*, 479 So. 2d at 1167.

While defendant had grounds to argue that BSE acted negligently when Carter was injured, Carter's claims arose out of the combined, or joint negligence of several companies, including negligence on the part of EMC. This is clearly seen in the Carter plaintiffs' supplemental expert report, which alleges:

> Both the defendants ABB and [BSE] failed to provide secondary protection between the transformer and Stand Number 9. It is Dr. Shah's opinion that these defendants' failure to install secondary protection violated industry standards, specifically, National Electric Code ("NEC"), Article 240-3. It is further Dr. Shah's opinion that had these defendants properly installed secondary protection as required, the presence of properly set secondary protection would have lessened the severity of injuries suffered by Ed Carter based on the duration of fault and the relay setting on "instantaneous[,]" which would have opened the secondary breaker in a few cycles.

(Doc. 21, Ex. 5, Tab K ¶ 1.) With regard to defendant's argument that Carter's claims arose out of BSE's sole negligence, EMC's negligence was a central issue in the Carter case. (*See generally* Doc. 21, Ex. 5, Tabs H-I, L, and N.) Regardless of the amount, if any, that would be owed BSE for indemnification, the allegations, proceedings and defenses in the Carter lawsuit were sufficient to trigger an obligation for defendant Valiant to defend BSE because of the indemnity agreement between EMC and BSE. *See Universal Underwriters Ins. Co. v.*

*Youngblood*, 549 So. 2d 76, 78 (Ala. 1989) (holding that insurers duty to defend is broader than their duty to indemnify).[5]

In sum, the indemnity agreement between EMC and BSE is an "insured contract" making BSE an additional insured under EMC's policy which required Valiant to tender a defense for BSE in the Carter lawsuit.

---

[5] Other courts have recognized this distinction. In *J. A. Jones Constr. Co. v. Hartford Fire Ins. Co.*, 645 N.E.2d 980, 981 (Ill. App. 1995), general contractor Jones and its liability carrier, Aetna sought a declaratory judgment of coverage under subcontractor PPG's general liability policy, which was issued by Hartford Fire Insurance. An employee of subcontractor PPG sued Jones after being injured on the job site. Jones, and its insurer, Aetna, tendered the defense to the subcontractor's liability carrier, Hartford. Hartford's policy contained endorsements providing coverage to owners and contractors required by specific contract to be included as additional insureds, and to "any person or organization with whom [PPG] agreed, *because of a written contract or agreement,* to provide insurance such as is afforded under [the] policy, but only with respect to your operations, 'your work' or facilities owned or used by you." *Id.* at 982 (emphasis added). Hartford refused the defense, stating that the indemnity agreement between Jones and PPG limited the coverage to the extent of the subcontractor's negligence. *Id.* The *Jones* court disagreed and noted, **"[t]he policy does not state that additional insureds are only additional insureds to the extent required by contract."** *Id.* **The court held, "[i]f the [carrier] had intended to limit its coverage to that required by contract, it could have done so by stating that the level of insurance provided to additional insureds is only that level which is required under the contract between the additional insured and the named insured."** *Id.* at 982-83.(emphasis added).

See also *Sonat Exploration v. Falcon Drilling Co., Inc.*, 85 F. Supp. 2d 649 (W.D. La. 2000), where the court rejected an argument similar to Valiant's:

> Falcon next argues there is no requirement that Falcon name Sonat as an additional insured for all purposes. Section 14.2 states Falcon shall have Sonat named as an additional insured "to the extent of liabilities assumed" by Falcon. Thus, Falcon's obligation to name Sonat as an additional insured was limited to Falcon's indemnification liability. **To the contrary**, Section 2 of Exhibit "C" requires Falcon to name Sonat as additional insured on all policies maintained by Falcon. That section does not contain the same limiting language as contained in Section 14.2 of the Contract.

*Id.* at 652 (emphasis added).

### C. Policy Exclusions

Valiant has a duty to defend BSE in the Carter lawsuit unless an exclusion in the Valiant policy applied. *See United States Fid. & Guar. Co. v. Armstrong*, 479 So. 2d 1164, 1167 (Ala. 1985) ("If the injured party's complaint alleges an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend, regardless of the ultimate liability of the insured.")

a. *Employers Liability Exclusion*

The Employers Liability Exclusion provides that the Valiant policy does not apply to "'Bodily Injury' to: (1) An 'employee' of the insured arising out of and in the course of: (a) Employment by the insured; or (b) Performing duties related to the conduct of the insured's business;" . . . . (Doc. 21, Ex. 2, Tab B at VAL 0061, § I(A)(2)(e).) However, Valiant remains liable for bodily injury to an employee of the insured, when the insured has assumed liability for such injuries under an "insured contract."[6]

Valiant argues that the Employer, Liability Exclusion applies because Mr. Carter was an employee of EMC, the named insured. Under Alabama law, however, when an insurance policy covers multiple insureds, this type of exclusion applies only where the injured person is an employee of the insured that is seeking coverage under the policy. *See Essex Ins. Co. v. Avondale Mills, Inc.*, 639 So. 2d 1339, 1342 (Ala. 1994); *Wilson v. State Farm Mut. Auto. Ins.*

---

[6]As noted above, Section V of the EMC/Valiant insurance agreement defines "insured contract" as "[t]hat part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement." (Doc. 21, Ex. 2, Tab C at VAL 0079, § V(14)(f).)

*Co.*, 540 So. 2d 749, 752 (Ala. 1989). Here Carter was not an employee of BSE, the insured seeking coverage under the policy. Therefore, this exclusion does not apply.

### b. *Contractual Liability Exclusion*

The Contractual Liability Exclusion says the exclusion does not apply to damages "assumed in a contract or agreement that is an 'insured contract,' [if] the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement." (Doc. 21, Ex. 2, Tab B at VAL 0060, § I(A)(2)(b).) In the instant case, the injury to Carter occurred *after* Appendix K was executed between BSE and EMC. Therefore, this exclusion does not apply.

### c. *Expected or Intended Injury Exclusion*

The policy provides that "bodily injury" or "property damage" expected or intended from the standpoint of the insured is not covered. The Expected or Intended Injury Exclusion does not apply because it is clear from the facts that Carter's injury was unintentional and therefore not expected or intended from BSE's, the additional insured's, standpoint. (Doc. 21, Ex. 2, Tab B at VAL 0060, § I(A)(2)(a).)

### IV.   **SETTLEMENT OF THE CARTER LAWSUIT DOES NOT WORK AS AN ESTOPPEL TO BSE'S CLAIMS**

Valiant notes that there were no claims in the Carter lawsuit that EMC's negligence contributed to the injuries and death of Mr. Carter. Valiant argues, "[b]ecause BSE made no claims against EMC as a joint tortfeasor and released all its claims against EMC, BSE is now estopped from prosecuting this action against Valiant in that the claims against Valiant's insured, EMC, were released." (Def. Valiant's Br. in Supp. of Mot. for Summ. J. at p. 12.) The court disagrees. The release agreement in the Carter lawsuit specifically excludes BSE's claims for

attorneys' fees against the defendant. BSE is not estopped from seeking the cost of defense of the Carter lawsuit from Valiant.

V.     **CONCLUSION**

For the reasons stated herein, the court is of the opinion that no genuine issues of material fact exist and plaintiff's Motion for Summary Judgment is due to be granted, and defendant's Motion for Summary Judgment is due to be denied. Pursuant to the terms of EMC's insurance policy with Valiant and the terms of the BSE/EMC contract, Valiant had a duty to tender a defense to BSE in the Carter lawsuit. Therefore, plaintiff is entitled to recover from Valiant the costs of its defense. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.[7]

**DONE** this the 31st day of March, 2004.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
United States District Judge

---

[7] As a final note, the litigants and their respective counsel have waited far too long for this decision. The court has no excuse and makes none for the delay in resolving this matter, knowing full well how difficult it is for the parties to make any informed choices about how to proceed when confronting the uncertainty of pending legal issues. It is the court's hope that no party has experienced undue expense or anxiety during this period of unjustifiable delay.